Thank you, Your Honor. Good morning. May it please the Court. I'm Daniel Kaplan. I represent the appellant in this case, Thomas Costanzo, and I'm going to be watching the clock and attempt to save about three minutes of time for my rebuttal. The essential question in this case is this. If two men sit across a table and the table is located entirely within the boundaries of one state and one of them hands over a pile of cash and the other one in exchange summons bitcoin out of cyberspace to appear on the other man's phone, does that constitute a transaction affecting interstate or foreign commerce involving the movement of funds? I guess the question to me that this case presents is whether the way in which that bitcoin was transferred had to use the Internet. And is the Internet interstate commerce? Well, the Internet absolutely can be used for interstate commerce. However, I think that it's significant that the government points to this Court's opinion in Sutcliffe, in support of a theory along the lines of what Your Honor is suggesting, and interprets Sutcliffe as saying because the Internet is an instrumentality of interstate commerce, something that uses the Internet, proof that something used to the Internet is proof of interstate commerce. And in the Wright decision, which came after Sutcliffe, this Court specifically said that in Sutcliffe it wasn't enough that those threats, that transmission of threats from a Web page involved the Internet. It had to also be proven that that Web page with the threats in it was uploaded in several different states. And in that case, the government presented the evidence in court to the jury that showed that that Web page was actually uploaded to servers in different states. That was the interstate commerce. So the answer to your question is absolutely the Internet can be used for interstate commerce, but the proof can't just establish that the Internet was involved. It has to show that it was, in fact, used for interstate commerce. Counsel, the government phrases the question in a slightly different way. The government says the question is was there a manifest miscarriage of justice because this point wasn't specifically raised in your Rule 29 motion, even after the district judge gave you the opportunity to raise specific points. Why isn't that the question? It's not the question because the defense counsel made a general Rule 29 motion saying, our Rule 29 motion is based on the assertion that the evidence is not sufficient to prove every element beyond a reasonable doubt, and then essentially she sat down. And under United States v. Cruz, this court said that a Rule 29 motion does not have to specify any particular basis. By its very nature, a Rule 29 motion draws into question sufficiency of the evidence to prove each element beyond a reasonable doubt. And so by making that motion, and this court's case law, in the specific context of proving the interstate commerce element of a federal crime, this court has said in Morgan and other cases that a Rule 29 motion, by drawing into question sufficiency on each element, draws into question sufficiency on an interstate commerce element. Do those cases discuss the standard in a circumstance like here where the district court specifically solicited the grounds and counsel, rather than resting on the general Rule 29 motion, in fact specified grounds that didn't include the interstate commerce element? I don't believe they do. However, I don't believe that is what the record reflects here. What happened here was she made her general Rule 29 motion, and then the court, the judge, was concerned about a different subsection of the statute. There was two different ways Mr. Costanzo could have been convicted, either or both, on each count. I think one was struck out for one count. But there was hiding the source was subsection B. That's what he was convicted on for all these five counts. Then there was another way of being guilty, which was intending to avoid a financial transaction reporting requirement, and he was not convicted on any of those theories for any of the counts. However, the judge was seriously contemplating granting a Rule 29 as to that second theory under subsection C. So after the general Rule 29 motion was made, he engaged the prosecutor in a pretty lengthy colloquy about, does that subsection C really mean anytime somebody chooses not to use a bank because they don't like transaction reporting requirements, they're guilty under this part of the statute? Because that seems a little extreme. The prosecutor and he had a long discussion. And then the judge turned to Mr. Costanzo's counsel, and again I'm questioning your characterization because he didn't say, can you tell me the specific grounds for your motion? He said, do you want to address what me and the prosecutor have just been talking about, which is whether subsection C is as broad as the government says. And before she even addressed that, Mr. Costanzo's trial counsel said, first of all, I want to stress again this is a general Rule 29 motion, and without in any way withdrawing that general motion, I will address that issue you're talking about about subsection C. So it's true the cases don't deal with that type of situation, but I think on the record the counsel was very clear that she was not in any way withdrawing or tempering her general Rule 29 motion when she did address that specific issue the court was interested in. And she also filed a written memo, which was not captioned as a Rule 29 motion. It was captioned as a memorandum on the issue the court was asking about, which is whether subsection C is as broad as the government says. Could your client have transferred the bitcoin to the undercover agent's digital wallet without using the Internet? I don't know the answer to that, and I don't because everything literally that I know about bitcoin comes out of the record in this case. So I'm a perfect stand-in for the jury here, and it shows that the evidence doesn't really establish that. It may be the case that the Internet would have to come into play. When they sat at the table, correct me if I'm wrong, didn't your client pick up his phone and do that? He picked up his phone and transferred. He caused the bitcoin to be transferred to the agent's phone, correct. To the agent's digital wallet. Digital wallet on the phone, yes. And my understanding from the evidence is that process and the operation of that digital wallet requires access to the Internet, doesn't it? I believe that's correct, and I believe that's what the evidence shows. And I would go back to what I was saying earlier, which is that simply involving the Internet is not enough. I understand. Your position is that if that were available, that's one thing that the government didn't prove it. Correct. That's your argument. Correct. And I think that the case law Sutcliffe and Wright do bear that out. The other cases that the government points to, if you examine the actual holdings, you'll see that, for example, they point to Santos, an unpublished case that involved the use of the telephone, and the telephone really is an interconnected global network of communication which can be used for commerce. So really the Internet was invented long after the telephone, but for purposes of what we're discussing here today, it's not all that different. The telephone could always be used to do interstate commerce or international commerce, but it had to be proven in all those Hobbs Act cases and all those cases of interstate commerce involving the telephone that it actually was used that way. That's why you have this whole jurisprudence called manufactured federal jurisdiction where some courts don't like it when an agent crosses over a state line just for the purpose of making a phone call so they can say, that's my interstate commerce link. The point being, just using the telephone to make a call, evidence that a telephone was used was never deemed sufficient to show there was interstate commerce. It is kind of hard to argue that as a general proposition that the Internet is not interstate commerce. Do you concede that as a general proposition? I do not concede that unless the statement is meant as a categorical characterization of the whole Internet. The Internet as a whole certainly is an engine of interstate commerce. There's an enormous amount of interstate commerce conducted over the Internet. But, again, going back to my parallel, the network of telephones is interstate commerce and international commerce, but it's never been thought that any use of a telephone, no matter where the other person on the call is located, necessarily constitutes interstate commerce. It seems like your argument is that, when my daughter plays some game on my wife's phone, that somehow engages the Internet in some way, but you would say that doesn't necessarily affect interstate commerce. If it's a free game and it's some silly, you know, someone jumping around on a pogo stick in this game, you're saying that just because it invokes the Internet doesn't automatically then satisfy the 1956 language. That's correct. And if your daughter were doing money laundering on her game, if it's the money laundering game... I do wonder what's behind some of these games, quite honestly, why they're all free, but that's a discussion for another day. My daughter just told me there's a game where you play a virus, so I don't want to get into that. But the point is, if the crime is being committed in connection with some game or something and it uses the Internet, and the government is trying to prove a statute like this was violated, they can't just show the person used this game and it's on the Internet. They have to prove that the use of that game involves some kind of interstate transmission, that there was interstate... In this statute's case, it would have to be an interstate movement of funds, interstate commerce involving the movement of funds. So, you know, it goes back to the Sutcliffe-Wright lesson, which is use of an instrument of interstate commerce, evidence that an instrument of interstate commerce was used, is simply not sufficient to show that there was interstate commerce. It has to be shown that it actually was used to do something interstate or international. And in this case, what we have is what I described at the outset. As far as the evidence shows, we have five transactions, each of them literally conducted over a table. None of those tables straddled an international or interstate borderline. And a pile of cash was handed over, and only two of those five instances was the source of the pile of cash identified. And in both cases, it was simply said it was government money. One of them said it was DEA funds, a flash fund, and another one said it was money from the coffers of the DEA or something like that. But that's all that was ever said about where that cash came from. And on the other side, we have this rather complicated electronic transaction involving the Internet, apparently, where Bitcoin is made to appear on the agent's phone. And if there had been evidence that that second piece of the puzzle, the Bitcoin appearing on the phone, actually involved the interstate transmission of funds, this would be a different case. But that evidence was simply never produced. Suppose, hypothetical to follow, suppose this at the table where they consummated the transaction, and your client has said, give me your bank routing number, and I will have my bank transfer electronically $100,000 to your account. Would that satisfy? It could because there's a separate piece of the statute where financial institutions are involved, and if the evidence could show that these particular financial institutions were institutions engaged in interstate commerce, which it should be easy to show for any substantial bank, then that would have sufficed. Here there's no question. Or give me your PayPal account information, and I will instruct my PayPal account to send money to your PayPal account. Would that count? Very possibly if the government could show that PayPal qualifies as a financial institution under the statute. I would like to save the balance of my time. Sure. Good morning, and may it please the court. My name is Gary Restaino for the United States in support of the district court's evidentiary rulings and the jury's guilty verdict in this case, and in particular in the fact that the jury's guilty verdict signifies a sufficient finding of interstate commerce. We'd like to answer Judge Hawkins' first question in the affirmative, that a Bitcoin transaction broadcast to the blockchain, the transparent public ledger, always will involve the Internet as a matter of law and based on the facts proven in this case. Your friend from the Federal Public Defender says that's great, but you didn't prove it. Did you offer proof of what this transaction involved electronically? We can offer proof, Your Honor, in terms of the nature of the Bitcoin transactions. No, I think what he's saying is, and you can explain as you wish, I think what Ms. Kaplan is saying is that you could have put on proof of what actually happened when his client hit a button on his phone and transferred Bitcoin or Bitcoins to the undercover agent's digital wallet. You could have put witnesses on that said this is exactly what happened, and it went to a server in Delaware and then to another server in California and then back to Arizona, but you didn't. So, Judge, I disagree that we didn't, and I think that the law doesn't require that we did. First of all, this is not wire fraud, where the wires have to cross state lines. A purely intrastate Bitcoin transaction broadcast to the blockchain is going to impact interstate commerce. Secondly, here's what we did show as to the nature of Bitcoin transactions generally. This is, remember, a movement of funds by wire. It's any medium of exchange that can be used to pay for goods and services. That's right out of the jury instruction. It comes from the old brick Silk Road case out of the Southern District of New York, and that's Bitcoin. Cash is exchanged, and then after the cash is exchanged at each of these five transactions, the QR code, the scan, the barcode taking the alphanumeric Bitcoin public key is scanned from one phone to the other. But the transaction's not done at that point, and the evidence shows what happens. The college student says these transactions typically take 25 minutes. He says that's because you've got to wait for these things to verify. We know that it's got to be broadcast to the blockchain, which is the transparent public ledger of every Bitcoin transaction ever made. We know this from Agent Fleischman's testimony at ER 397, as well as the demonstrative videos that were shown, as well as from Agent Ellsworth's expert testimony. And that's when you cite Ellsworth's testimony. This is at page 22 of your brief, the two paragraphs you cite there. That's correct, Your Honor, as to Ellsworth. We also know that this is decentralized. That term comes up all the time because it's maintained by miners running these computers all over. Now, do we know that the miners in these particular transactions that are charged were outside the United States? We don't. We know that one from an earlier transaction hit a node in Germany, and we know that one pretty clearly, and we would ask if the court finds it necessary to show interstate transmission, notwithstanding the language of the statute, that that's an inference that can be drawn. But we know more than that, too. We know that these miners are verifying the transaction to ensure that there's not a fake transaction put on, and that's what takes the computer time. That's how they earn their fee, which is why this is distinguishable from Judge Owen's hypothetical about the free game on the Internet. This is not free. This is a common fee that is being paid to the miners for verifying the transactions done multiple times, and miners also earn new bitcoin. This is from exhibit 105G, cited at page 9 of the brief. This is the way that miners work, and this comes from Defendant Costanzo's own words. We also know, and we would ask the court to take into account, the brochure found at the defendant's residence that describes blockchain technology and bitcoin generally as being distributed all over the place, through networks and through global markets. So for this reason, we do think that this is interstate commerce, whether it crosses outside of Arizona or not, based on the nature of the system. I do want to focus as well, though, on the distinction between the jury instructions and the statutes on these different cases that are being cited. This is not wire fraud. There's no requirement that these transactions go outside of Arizona. It simply has to affect interstate commerce in any way, rather than be carried out in interstate commerce. Is it the government's position that the undercover agent's statements that at least one of these transactions was an illegal transaction that occurred in another state, that that's enough for interstate commerce? Not substantively, Your Honor. We agree that that's not a way to prove it substantively. We do have a few pages in our brief devoted to attempt liability and attempt jurisdiction. It's not the way the case was postured. It's not the way it was framed. We are not relying on that beyond incorporation in our brief for the purposes of our argument today. We believe that these were finalized sting transactions, all of which impacted interstate commerce. I'd also like to continue with another statute and why the Sutcliffe case is on all fours for us. Sutcliffe is a case about interstate communication of threats. And 875C reads the same way as the wire fraud statute. The threat has to actually go into interstate commerce. So what does the Sutcliffe court do? They spend two or three pages setting up the importance of the Internet. It's certainly not dicta. It's essential to that holding. And then they find the extra fact that we don't have to find here, which is that those threats in Sutcliffe being broadcast through the Internet did actually go interstate. Here we have broad instrumentalities that are used and we have broad Bitcoin transactions that are taking place. And I'd like to tick off a few more cases that support the government's theory. Beyond Sutcliffe, we think that Jenkins and Basile, two other money laundering cases, support the government's position. The defense, Mr. Kaplan was talking about the 1956C4 definition of interstate commerce and money laundering. It can be satisfied through use of a financial institution or through use of the movement of funds or money or wires. But in either prong, interstate commerce still has to be met. And that's why the Basile case is instructive for us. Now that's a case procedurally that is illustrative because it's on very, very narrow facts. The defendant pleads to the underlying SUA and then the government goes to trial based just pretty much on the plea agreement to establish the interstate commerce. And so there's a check from one credit card company that's used to pay off a debt to another credit card company. The credit card companies are named, but there's no evidence at all that it goes outside of the state. And in that case, the court finds that the use of banking channels supports the interstate commerce element and the court specifically finds in Basile that there were other possibilities, that perhaps that money just stayed in state but that the greater inference is that because it went into banking channels, it satisfies interstate commerce. And I would posit that here the blockchain is banking channels on steroids. The blockchain is a transparent public ledger of every transaction ever made with bitcoin. Those transaction records don't disappear after seven years like with regular banks. There's no need to go to the different branches of different banks to find all the transactions. It's all there on the blockchain. It's broadcast to the blockchain for the purposes of preserving the transactions, maintaining the transactions, verifying them, paying the miners, and also creating the new supply of this limited resource of bitcoin. All of that supports the interstate commerce element here, giving all deference to the jury's verdict and in the light most favorable to sustaining the jury's verdict. And for those reasons, we do believe that whether or not nodes are hitting in Germany or elsewhere, the nature of bitcoin is what makes this interstate commerce. I'd like to give you an example of what might not meet interstate commerce. Let's say it's the two men across the table hypothetical that Judge Hawkins was talking about in the beginning. And let's say one person gives to the other a paper wallet, literally alphanumeric numbers at the top, which are the public address, and gives the alphanumeric numbers at the bottom, which are the private key, and says, here, you take that as payment. That's not going on the blockchain. It may well go on the blockchain later when that private key is entered in. But here the transaction, the essence of the transaction, is what happens when that QR code is scanned and we spend 25 minutes in cyberspace waiting for the verifications coming through multiple batches and also having the verifications take place. And finally, I would discuss the Jenkins case, which we think is another one-buy analogy. Jenkins is a money-laundering case out of Arizona, pump-and-dump stock scheme. Much of it was clearly international. But as to one tranche of six charges, there were purchases made at an automobile dealer. And the court found there, citing to an Eighth Circuit case, that just the mere act of purchasing from a commercial automobile dealer, again, has some impact in any way or degree on interstate commerce to support this element of the offense. And for those reasons, the government urges the court to support the jury's verdict. I'd like to move on to the court's evidentiary rulings, if there are no further questions. I did have a question for you on the conditions of supervised release. Yes, Your Honor. John, I don't want to limit your other arguments, but one of the conditions is major purchases of $500 or more. And I think you agree that even if you prevail on appeal, this case still needs to go back to reconcile the oral conditions and the written conditions, correct? Not as to that condition. No, I understand, but on a different... You agree it has to go back. Even if you win, it still has to go back for this limited purpose to reconcile. We do agree, Your Honor. All right, so if it does go back for major purchases, and I know this has been used in other cases. I think when I was a prosecutor, I think it was in some of my cases. But I think Mr. Kaplan's brief made me start thinking about what does that mean? Like, for example, if his client wants to get a job in sales and so he has to go buy a suit, a suit and shoes, and that's $502, would he have to get the probation officer's permission to buy a suit so he can get a job? If it's $502? Some of this, Your Honor, is determined by the interaction that the probation officer has with the defendant. As written, the defendant has to consult. It may be that the probation officer is going to set up ground rules as to what major purchases are, but that condition fairly informs the defendant of the discussion that needs to take place and the limitations that can happen absent the dialogue. Let me also say this, Judge Owens. Whatever happens here today, Mr. Costanzo's getting out of custody at the end of this month. And if the court affirms the verdict, he's going to be on conditions of supervision. And so we do believe that any crystal clear guidance that can be provided is appropriate to him, both so that he can make his way through probation and to protect the public from his activities. We believe that those conditions are appropriate here. We believe that particularly under a plain error standard of review, there's no case that's held that those conditions and the way it's delineated with the commas, there's no court that's found that that is inappropriate in terms of the guidance that's offered. Obviously, if there is a remand, we'll work with the district court to try to ensure that there's guidance to Mr. Costanzo. But we do believe that under plain error review, those conditions should not be adopted. And I don't want to belabor the point, but I'm just trying to understand is there a minor purchase of $500 versus a major purchase of $500? Like, what's the difference? And, Your Honor, I think that's up to the probation officer to explain. That's the best that I can do on that. Very well. Thanks for the opportunity to address that. I do want to go now to the court's evidentiary rulings. It's a 404 and 403 analysis. There's substantial probative value here, but there's really also not much prejudice. You can talk about this, but Mr. Kaplan did not raise it. Your Honor, I do simply want to say that the DMT purchases in particular are not of any prejudicial concern and are probative towards ensuring that the defendant understood that bitcoin can be used for unlawful purchases. The way they're postured as well is not in any sense prejudicial. And the first time it's postured, it was without objection from the defense. For those reasons, we believe that the court's evidentiary rulings were correct. We do urge the court to have a broad view of interstate commerce. Because of the nature of the bitcoin, because the money laundering statute is vastly different from the wire fraud statute and the interstate threat statutes and many other statutes that require an interstate transmission, in any way, interstate commerce has been impacted here, and we do believe that there is sufficient evidence for the court to sustain the verdict, which is what we ask it to do. Thank you. Thank you, counsel. Let's give Mr. Kaplan three minutes. Thank you, Your Honor. There was mention made of the node in Germany. The evidence as far as the node in Germany was simply there was an image from one of the transactions on September 14, 2016. This was not a transaction that underlay any of the charges of which Mr. Costanza was convicted. Furthermore, all the witness said about it was, oh, that's just the blockchain processing the transaction. It had nothing to do with us. So it's quite a leap in two different ways to say something about the charged transactions, A, that Germany or any other particular part of the globe was involved in a node, and B, that the involvement of a node actually constitutes interstate commerce, because there's absolutely no evidence to show either one of those two things. There also was some argument to the effect that the miners who are involved in transactions create the interstate commerce. Well, the fact is the only real substantive discussion of the miners and the role they play basically came out of two videos the jury was shown at the very beginning of the trial, both of which Mr. Rusteno expressly identified to the court as demonstrative exhibits. Demonstrative exhibits are not part of the evidence on which the jury is permitted to reach its verdict. So even if those videos did show that the involvement of miners involved interstate commerce if they're interstate or international, they couldn't consider that. In fact, they didn't show that. They said some things about miners, but they didn't establish that kind of interstate commerce connection. Furthermore, even if the evidence had shown that the involvement of an out-of-state miner makes a transaction interstate commerce under the statute, there was zero evidence that any one of these... as to where any of the miners for any of the charged transactions were physically located. The only evidence as to any node or miner or anything along those lines to the location of any such individuals for any of these transactions, both charged and uncharged, was as to that 1 September 14, 2016, transaction, which was an uncharged transaction. So our point in our reply brief about the so-called Germany transaction is it's quite a leap to say because one transaction involves some individual who may have been in Germany that any conclusion can be drawn about any other transaction as to whether any other individual involved could have been. There was no evidence that every single transaction in Bitcoin involves the exact same miners, and there is absolutely no basis to reach that conclusion. As far as looking to the Basway case, that case rested on Part C-4B of 1956, which refers to the involvement of a financial institution which itself is involved in interstate commerce. As we talked about earlier, Judge Hawkins' hypothetical, if it's eBay or if it's banking systems, if it's banks that are involved, then those banks being part of interstate commerce would be enough, and proof that those banks were involved would be enough. These were over-the-table cash-for-Bitcoin transactions where really the whole point, as the government repeatedly stressed throughout the trial, was to avoid banking systems. So pointing to your best case as a case that rested on the use of banking systems for a trial where the whole point of the transactions was to stay as far away as possible from banking systems I think is a sign of the hole in the center of the government's case. Thank you very much, Mr. Kaplan. Thank you, Your Honors. Thank you, both counsel, for an excellent argument in briefing this case. This matter is submitted, and this panel is in recess.
judges: Clifton, Owens, Bennett